# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOHNNY HOYT (#479082)**                                **CIVIL ACTION NO.**

**VERSUS**                                                       **20-865-JWD-EWD**

**JAMES M. LeBLANC, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, August 28, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOHNNY HOYT (#479082)**                        **CIVIL ACTION NO.**

**VERSUS**                                        **20-865-JWD-EWD**

**JAMES M. LeBLANC, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment ("Motion"), filed by Defendants Darryl Vannoy, Michael Jack, and Tammy Hendrickson ("Defendants").[1] The Motion is opposed by Plaintiff Johnny Hoyt ("Hoyt").[2] It is recommended that the Motion be granted in part and denied in part. Defendants are entitled to qualified immunity on Hoyt's claims against them in their individual capacities for monetary relief, but qualified immunity is not available for Hoyt's claim for injunctive relief related to his confinement in Closed Cell Restriction ("CCR") since 2008.

### I.    BACKGROUND

Hoyt, who is confined at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana and who is representing himself, brought this suit on December 17, 2020 against James M. LeBlanc, Darryl Vannoy, Michael Jack, and Tammy Hendrickson under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights.[3] This Court conducted the screening mandated by 28 U.S.C. § 1915A, and evaluated the claims under 28 U.S.C. § 1915(e), which resulted in dismissal of all Hoyt's claims except his claims for injunctive relief against Vannoy, Hendrickson, and Jack in their official capacities and claims for monetary relief against these same

---

[1] R. Doc. 26.
[2] R. Doc. 29.
[3] R. Doc. 1, p. 4.

Defendants in their individual capacities arising from Hoyt's alleged continued confinement in CCR without meaningful review.[4]

## II. LAW & ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[5]  A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no genuine issue of material fact.[6]  If the moving party carries its burden of proof under Federal Rule of Civil Procedure 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[7]  Summary judgment must be entered against a party who fails to make an adequate showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[8]  In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[9]

---

[4] R. Docs. 4, 5 & 7.  Hoyt originally did not seek monetary relief.  R. Doc. 1. However, he filed an Amended Complaint that sought monetary relief after his initial complaint was screened.  R. Doc. 6.  That amendment was allowed.  R. Doc. 7.
[5] Fed. Rule Civ. P. 56.  *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Celotex Corp.*, 477 U.S. at 323.
[7] *Anderson*, 477 U.S. at 248.
[8] *Celotex Corp.*, 477 U.S. at 323.
[9] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**B. Defendants are Not Entitled to Summary Judgment on Hoyt's Claims for Injunctive Relief**[10]

Defendants admit that Hoyt was originally sentenced to CCR on or about February 18, 2008 and has remained in CCR since that time.[11]  The Due Process clause of the Fourteenth Amendment prohibits state officials from depriving "life, liberty, or property without due process of law."[12]  Analysis of procedural due process involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State…the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient…."[13] Hoyt's claims hinge on whether he has been deprived of a liberty interest without adequate procedural protections.

In cases regarding heightened confinement, an inmate's constitutionally protected liberty interest is "generally limited to freedom from restraint which…imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life;" only then does a liberty interest arise to trigger the protections of the due process clause.[14]  "[T]he Due Process clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."[15]  Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification.[16] Even solitary or

---

[10] Defendants request qualified immunity as to all claims, but qualified immunity is not available for claims for injunctive relief.  *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n. 3 (5th Cir. 2020) ("qualified immunity protect[s] only *individuals* from claims for *damages*; [it does] not bar official capacity claims or claims for injunctive relief.") (emphasis in original; citations omitted).

[11] *See* R. Doc. 26-1, ¶¶1-2.

[12] U.S. Const., Amend. XIV.

[13] *Kentucky Dept. of Corrections v. Thompson*, 409 U.S. 454, 460 (1989).

[14] *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

[15]*Id.* at 478.

[16] *Id.* at 484.

segregated confinement is "typically viewed as an ordinary, expected, and permissible incident of prison life."[17]

Determining whether Hoyt's confinement in CCR poses an atypical and significant hardship evaluated in the context of prison life, such that a liberty interest has arisen, requires application of "a sliding scale, taking into account how bad the conditions are *and* how long they last."[18] The United States Fifth Circuit Court of Appeals has held that "absent extraordinary circumstances, administrative segregation, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim,"[19] and has suggested that "two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest."[20]  The Fifth Circuit recently affirmed this Court' grant of qualified immunity in a heightened conditions of confinement case, noting that it was not clear that a liberty interest had arisen: "we have noted that a period of eight years in solitary confinement with no prospect of immediate release in the near future is sufficient to give rise to a liberty interest, but a period of two and one-half years in confinement is not."[21]  Based on the nuanced analysis required, considering both conditions of

---

[17] *Bailey v. Fisher*, 647 Fed.Appx. 472, 474 (5th Cir. 2016), citing *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) and *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).
[18] *Bailey*, 647 Fed.Appx at 476.
[19] *Pichardo*, 73 F.3d at 612.
[20] *Bailey*, 647 Fed.Appx at 476, citing *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014) (internal citations omitted).
[21] *Escobarrivera v. Whitaker*, No. 21-30147, 2022 WL 17352178, at *5 (5th Cir. 2022) (*per curiam*). On numerous occasions in determining whether an inmate has a claim for a due process violation because of segregated confinement, the Fifth Circuit has compared the duration of confinement in segregation to the "two and a half years of segregation…threshold."  *See Barnes v. Givens*, 746 Fed.Appx. 401, 402 (5th Cir. 2018) (noting that an inmate had stated a claim for a due process violation "especially in light of his allegation that he has been in administrative segregation on cell rotation for at least 10 years," comparing that length of time to the "threshold" stated in *Bailey*); *Bailey*, 647 Fed.Appx. at 476-77 (comparing the two and a half years "threshold" to the length of time the inmate was confined in segregation). Again, in *Butler v. S. Porter*, 999 F.3d 287, 296 (5th Cir. 2021), the Fifth Circuit reiterated this threshold, stating "Regarding the duration of the restrictive confinement, we have said that two and a half years of segregation is a threshold of sorts for atypicality ... such that 18–19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." (internal quotation marks and citations omitted).  One

confinement and duration,[22] a liberty interest has arisen in this case. Though the record is scant

regarding the conditions to which Hoyt is exposed in segregated confinement, the evidence

provided establishes that he is separated from the general population;[23] generally confined to his

cell,[24] though he is usually granted a minimum of one hour of exercise per day outside of his cell,

five days per week, unless security or safety considerations dictate otherwise;[25] has phone and

visitation privileges; is provided daily showers; may engage in conversation; and has many of the

other privileges of general prison life.[26] In his deposition, Hoyt specifically pointed to his inability

to "get a GED" and to obtain trade skills while in CCR as the primary impact on his liberty.[27] Hoyt

has been confined in typical segregation conditions for approximately 15 years.[28] It is undisputed

---

recent case, *Carmouche v. Hooper*, No. 21-30082, -- F.4th ---, 2023 WL 5116377, at *2 (5th Cir. Aug. 10, 2023), appears to stray from this precedent, holding that no such threshold exists. For nearly the last decade, courts have relied on these useful guideposts when examining due process cases presenting *typical* conditions of segregated confinement, and these cases have been affirmed by the Fifth Circuit. *See, e.g., Kelley v. Buscher*, 14-82, 2016 WL 5415822, at *3 (S.D. Miss. Sept. 28, 2016), *aff'd*, 702 Fed.Appx. 236 (5th Cir. 2017) ("Even if Kelley is correct in his claim of 25 months of segregation, this still does not reach the 'threshold' of 2 ½ years referred to by the Fifth Circuit."); *Butler v. Porter*, 17-230, 2017 WL 7035681, at *3 (W.D. La. Aug. 1, 2017), report and recommendation adopted, No. 17-230, 2018 WL 505333 (W.D. La. Jan. 19, 2018), *aff'd sub nom. Butler*, 999 F.3d 287 (5th Cir. 2021) ("Considering that Butler was in segregation at FCIO for no more than one year, and that this time still falls well under eighteen months even adding the administrative segregation at FCIA, it appears that such duration is not sufficiently atypical to trigger a due process interest and his claims in this regard should be dismissed."); *Dillard v. Dir., TDCJ-CID*, No. 19-00022, 2020 WL 4938663, at *2 (N.D. Tex. July 22, 2020), report and recommendation adopted, No. 19-00022, 2020 WL 4933563 (N.D. Tex. Aug. 24, 2020) (even assuming inmate had been in segregation for approximately one and a half years, he could not state a claim actionable under the law, citing the two and a half years threshold as the typical duration required in segregation to demonstrate atypicality). These cases recognize that "run-of-the-mill" conditions of segregated confinement will not be sufficient to state a due process claim unless the duration is sufficiently long, and that a duration of at least two and a half years is generally required. Of course, if conditions were harsher than typical segregation conditions, the length of confinement under those conditions sufficient to state a due process claim would be shorter—that is the nature of the sliding scale. While locating the appropriate baseline from which to measure what is atypical and significant is difficult (s*ee Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)), using these well-established guideposts while still performing a multifaceted analysis are not mutually exclusive.

[22] *Carmouche,* 2023 WL 5116377, at **2-3.

[23] R. Doc. 16-3.

[24] R. Doc. 16-5, p. 2.

[25] R. Doc. 16-4, p. 4.

[26] R. Doc. 16-4, p. 6.

[27] R. Doc. 26-6, p. 9; R. Doc. 29, p. 5. Other evidence in the record also demonstrates that offenders in segregated confinement are provided with a minimum of one hour of out-of-cell exercise, five days per week; the opportunity to shower at least three times per week; and access to correspondence, phone calls, and reading and legal materials. R. Doc. 19-2, p. 3.

[28] R. Doc. 26-5, p. 80. Hoyt was issued a disciplinary report for contraband, was found guilty on February 22, 2008, and was sentenced to segregated confinement.

that the conditions of segregated confinement are more restrictive than those normally faced by prisoners. Given the length of time and the nature of the conditions, as established by the evidence of record, Hoyt has established a liberty interest. Because he has a liberty interest, the next question to address is whether the process Hoyt is afforded for review is constitutionally sufficient.

To determine what process is due, "requires consideration of three distinct factors" established in *Mathews v. Eldridge*:[29] (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[30]

Regarding the first factor, though Hoyt has an interest, it "must be evaluated…within the context of the prison system and its attendant curtailment of liberties."[31]  The question becomes "how much liberty is [Hoyt] deprived of over and above what would normally be incident to prison life."[32]  As noted above, the conditions of CCR are not well described in any of the competent record evidence, but Hoyt's liberties are curtailed more than the average inmate's, and have been for a long time.  However, considering that the restrictions must be evaluated against general prison life and that the evidence shows Hoyt does have some of the privileges other incarcerated persons enjoy, Hoyt's private interest is relatively low.[33]

---

[29] 424 U.S. 319 (1976).
[30] *Hope v. Harris*, 861 Fed.Appx. 571, 580–81 (5th Cir. 2021) (*per curiam*) (internal quotation marks omitted), citing *Wilkerson*, 545 U.S. at 224-225.
[31] *Id.* (internal quotation marks omitted).
[32] *Id.*
[33] *See Hope*, 861 Fed.Appx. at 580, 583 (private interest of the plaintiff was "low" when compared with normal prison life, notwithstanding that plaintiff was held in a cell "no larger than a parking space" twenty-three to twenty for hours per day that was "sometimes unsanitary," and placement was virtually indefinite—plaintiff had been in segregation for 23 years, and there was no end in sight); *Striz v. Collier*, No. 18-202, 2020 WL 7868102, at *10 (S.D. Tex. May 5, 2022) (where plaintiff failed to offer specific evidence regarding his conditions of confinement, the court found that the private interest was not significant).

The second factor considers the risk of erroneous deprivation, which entails questioning what notice Hoyt has for the reason(s) he continues to be housed in segregated confinement and whether he has a fair opportunity for rebuttal. The only competent summary judgment evidence provided by Defendants includes lockdown review summaries, disciplinary reports, and Hoyt's deposition.[34]

This Court has previously found that the consistent, mindless checking of the box for "Nature of Original Reason for Lockdown" may violate the Fourteenth Amendment.[35] From October 6, 2020 to July 13, 2023, there are almost 30 lockdown review summaries in the record. The lockdown review summaries for all but one of those hearings indicated that Hoyt was not released due to "Nature of Original Reason for Lockdown," noting the February 19, 2008 as the pertinent date for original placement in lockdown.[36] Of all the reviews, approximately half also noted a rule infraction received on December 22, 2019.[37] There is no evidence of any other disciplinary violations by Hoyt for approximately 3 ½ years from December 22, 2019 through June 25, 2023, yet he was continuously denied release based upon reference either to the December 2019 violation and/or "Nature of Original Reason for Lockdown," with no additional explanation.[38]

---

[34] R. Docs. 26-4, 26-5, & 26-6.

[35] *Fussell v. Vannoy*, No. 13-571, 2016 WL 3538376, at *5 (M.D. La. June 22, 2016) (noting that simply checking the box for "Nature of Original Reason for Lockdown" renders an inmate's punishment to segregated confinement virtually indefinite and may violate the Fourteenth Amendment); *Wilkerson v. Stalder*, No. 00-304, 2013 WL 6665452, at *10-11 (M.D. La. Dec. 17, 2013).

[36] R. Doc. 35-3, pp. 2-31. The one hearing that did not note February 19, 2008 appears to have incorrectly listed the relevant date for Hoyt's original placement in lockdown as May 12, 2011. R. Doc. 35-3, p. 23.

[37] *See* R. Doc. 35-3, pp. 5-7, 9-14, 23, 27, and 30-31.

[38] There also appears to be some inconsistency in the completion of the lockdown review summaries. Although Defendants argue that Plaintiff's disciplinary infractions were "considered in the decision-making process," (R. Doc. 26-2, p. 7), that is not clear from the summary judgment evidence presented where many of the lockdown review summaries explain the reason for the decision not to release Hoyt from CCR by simply checking the box for "Nature of Original Reason for Lockdown," without any reference to a more recent rules infraction. Of the reviews conducted prior to December 2019, nearly all deny release by checking the box for "Nature of Original Reason for Lockdown" and/or "Not Enough Time on Current Level," and those that do give additional explanation provide very little,

The pattern of checking the box, along with Hoyt's sworn testimony that the paperwork is already completed when the review "hearing" occurs,[39] calls into question whether there is a real opportunity for rebuttal and therefore, whether *meaningful* review takes place.[40] Notably, Defendants did not provide any evidence in the form of testimony or affidavits from any prison staff participating in the lockdown review process to shed additional light on the extent of the review. Considering the evidence indicating that meaningful review may not be taking place, the risk of erroneous deprivation is high.

Finally, the government interest at stake here is the ability to continue to hold Hoyt in CCR without more meaningful review, not whether Hoyt may be held in CCR at all.[41] A state's "first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves."[42] Evidence submitted by Defendants demonstrates that, though Hoyt has a long history of disciplinary infractions while in segregated confinement, he went *years* without receiving a single infraction from December 2019 until a recent infraction in June 2023, where Hoyt used a string to tie the cell bars together to prevent the cell from closing. Although the reason for the sentence for the June 2023 infraction is listed as "seriousness of offense," the minor sanction imposed on Hoyt of two weeks loss of canteen belies that the offense was considered "serious."[43] While Defendants argue that Hoyt remains in CCR because of continued rule

---

generally consisting of the date a new infraction was received. *See* R. Doc. 26-4. "Escape Risk" is also sporadically checked along with one of those two reasons. At least one lockdown review summary fails to even check a box other than "Not Released." R. Doc. 26-4, p. 53.

[39] R. Doc. 26-6, p. 13. Hoyt also testified that the board members in the hearings are simply going through the motions "just to say that [they] did it." R. Doc. 26-6, p. 14.

[40] *Wilkerson*, 2013 WL 6665452, at *11.

[41] *See Hernandez Gomez v. Becerra*, No. 23-01330, 2023 WL 2802230, at *4 (N.D. Cal. Apr. 4, 2023) ("the interest at stake in this motion is the ability to detain Hernandez Gomez without providing him with another bond hearing, not whether the government may continue to detain him.") (internal quotation marks and citations omitted).

[42] *Wilkinson*, 545 U.S. at 225.

[43] R. Doc. 35-2, p. 2. For example, Hoyt received 4 weeks loss of yard for the December 22, 2019 infraction (R. Doc. 26-5, p. 1) and 12 weeks loss of phone privileges for a disciplinary infraction on November 2, 2019. R. Doc. 26-5, p. 2. For an aggravated fighting incident on May 7, 2019, Hoyt lost yard and canteen for 8 weeks. R. Doc. 26-5, p. 4.

violations, the lockdown review summary after the June 2023 infraction does not say that Hoyt was denied release because of that infraction, but rather checks the box (again) for "Nature of Original Reason for Lockdown."[44]  Notwithstanding the absence of documented rules infractions for almost the last four years, Hoyt's release from lockdown has been continually denied for "Nature of Original Reason for Lockdown" and/or due to the rule infraction occurring in December 2019.  Other than their argument that Hoyt continues to be confined in CCR because of repeated rules infractions, Defendants have not provided any summary judgment evidence of the lockdown review process. It would not appear that the fiscal and administrative burden of providing meaningful review of Hoyt's continued confinement is prohibitive.[45] While there may well be valid reasons for holding Hoyt in CCR, that does not minimize the importance of a meaningful determination of whether those interests continue to exist each time Hoyt is reviewed for possible release from CCR. Therefore, the government interest in continuing to restrict Hoyt to confinement in CCR without meaningful review is relatively low.[46]

Because both the private interest and government interest here are relatively low, the deciding factor is the risk of erroneous deprivation.  Based on the checking of a box coupled with the limited commentary provided and the question of fact as to whether the form denying release is completed prior to the "hearing," such that the inmate is deprived of a true opportunity to be

---

[44] R. Doc. 35-3, p. 2.

[45] Meaningful review may be provided in a variety of ways, many of which are not particularly burdensome. *See Striz,* 2020 WL 7868102, at *10 (advance notice of hearings, opportunity to be heard, ability to submit written statements from witnesses and being informed of the factual basis of the review committees' decisions sufficient to comport with due process). Because Defendants did not provide evidence regarding the review process, it is not possible to fully compare the process available to Hoyt to other cases where the process has been found sufficient.

[46] *Compare Tate v. Starks,* No. 08-73, 2013 WL 5914398, at *6 (N.D. Miss. Nov. 4, 2013) (government interest high in keeping gang leader out of general prison population); *Striz,* No. 18-202, 2020 WL 7868102, at *11 (S.D. Tex. May 5, 2022) (interest high where plaintiff had previously escaped and violently assaulted two jailers).

heard, a jury could conclude that no real review occurs in the lockdown review hearings.

Accordingly, Defendants' Motion should be denied as to Hoyt's claim for injunctive relief.[47]

### C. Defendants are Entitled to Qualified Immunity on Hoyt's Claims Against Them in Their Individual Capacities for Monetary Relief

Though the review provided regarding Hoyt's lockdown may not comport with due process, that was not clearly established at the time of the violations, so Defendants are entitled to qualified immunity as to Plaintiff's claims for monetary relief against them in their individual capacities. The qualified immunity defense is often asserted by prison officials in § 1983 cases. Employing a two-step process, the defense operates to protect public officials who are performing discretionary tasks.[48] Viewing the facts in the light most favorable to the plaintiff, courts evaluating the defense consider whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time the violation occurred. Courts have discretion to decide which of the two prongs of the analysis to address first.[49] The assertion of the qualified immunity defense alters the summary judgment burden of proof.[50] Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[51] "The plaintiff bears the burden of negating the defense and cannot rest on

---

[47] Hoyt's claims against Vannoy for injunctive relief are subject to dismissal. As indicated in Hoyt's deposition testimony, Vannoy is no longer employed as Warden of LSP, so he no longer has the power to grant the injunctive relief requested. R. Doc. 26-6, p. 24. Therefore, the claims for injunctive relief against Vannoy should be dismissed, resulting in Vannoy being dismissed from this action entirely.

[48] *Huff v. Crites*, 473 Fed.Appx. 398, 399 (5th Cir. 2012).

[49] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").

[50] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

[51] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), citing *Michalik*, 422 F.3d at 262.

conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[52]

The relevant question in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation he confronted.  To defeat an assertion of qualified immunity, a plaintiff "must point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates the law.[53] "[F]or a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"[54] Additionally, qualified immunity is inappropriate only where the officer had "fair notice"—"in light of the specific context of the case, not as a broad general proposition"—that his particular conduct was unlawful.[55]

The conditions to which Hoyt is exposed are the typical conditions of segregation, as discussed above, and it is clearly established that Hoyt has been held in typical segregated confinement for enough time to give rise to a liberty interest.[56]  However, at the time of the violation, it was not beyond debate that the process afforded to Hoyt was insufficient to comport with due process.

Though often just a box was checked providing the basis for the denial of Hoyt's release from CCR, occasionally *some*, albeit little, commentary was also provided.[57]  Intermittently on

---

[52] *Michalik*, 422 F.3d at 262.

[53] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (citations omitted).

[54] *See White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 551 (2017) (*per curiam*), quoting *Mullenix v. Luna*, —— U.S. – ——, 136 S. Ct. 305, 308 (2015).

[55] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (quotation omitted).

[56] *Escobarrivera*, 2022 WL 17352178, at *5.

[57] *See, e.g.*, R. Doc. 26-4, pp. 15 (noting denial was due in part due to a charge of drug smuggling on December 22, 2019), 31 (rule infraction on January 10, 2020), 36 (noting Hoyt was an escape risk and violated rule 11 twice on May 7, 2019), 39 (violated rule 5 on August 13, 2019), 42 (violated rule 1 on March 25, 2019), 43 (infraction on February 15, 2019 for possession of iPhone, chargers, and ice picks), 45 (new rule infraction on January 19, 2019), 47 (violated rule 1 due to possession of cigarettes, homemade handcuff shim, and homemade hooch on December 19, 2017).

11

reviews, the Board would note the nature of a more recent disciplinary infraction, as well as the date of the infraction, providing Hoyt with some notice as to why he was not being recommended for release from lockdown.  Further, though Hoyt was first placed in segregated confinement on February 18, 2008, the evidence shows that he has been resentenced to varying levels of segregated confinement due to rule violations, as indicated by varying dates for "Date of original placement in extended lockdown."[58]  For example, on May 3, 2019, Hoyt was found guilty of an aggravated fight that occurred one day earlier and sanctioned to a quarters change "to another ext. lockdown," though he was already in CCR.[59]  Thus, though the Board checked "Nature of Original Reason for Lockdown" fairly often throughout the years, it appears that not all of these reviews were referring back to the original reason Hoyt was placed in lockdown in 2008; rather, other sentences to CCR occurred between the original sentence and the Board's reviews. For example, Hoyt received disciplinary infractions on February 19,[60] May 27,[61] August 16,[62] September 14[63] and 29,[64] October 16,[65] 2008; January 17,[66] March 27,[67] 2010; October 24,[68] 2011; June 30,[69] July 25,[70] 2013; February 13,[71] 2014; March 23,[72] December 30,[73] 2016; March 29,[74] May 22,[75] June 7,[76]

---

[58] *See, e.g.*, R. Doc. 26-4, p. 67 (indicating Hoyt was placed in CCR on April 13, 2016); 83 (indicating placement on March 11, 2014).
[59] R. Doc. 26-5, pp. 7-8.
[60] R. Doc. 26-5, p. 78.
[61] R. Doc. 26-5, p. 77.
[62] R. Doc. 26-5, p. 76.
[63] R. Doc. 26-5, p. 75.
[64] R. Doc. 26-5, p. 74.
[65] R. Doc. 26-5, p. 73.
[66] R. Doc. 26-5, p. 71.
[67] R. Doc. 26-5, p. 57.
[68] R. Doc. 26-5. P. 70.
[69] . Doc. 26-5, p. 65.
[70] R. Doc. 26-5, p. 64.
[71] R. Doc. 26-5, p. 60.
[72] R. Doc. 26-5, p. 39.  Hoyt was sentenced to the Camp J Management Program for this offense.  R. Doc. 26-5, pp. 38-39.
[73] R. Doc. 26-5, p. 33.
[74] R. Doc. 26-5, p. 30.
[75] R. Doc. 26-5, p. 28.
[76] R. Doc. 26-5, p. 27.

June 12,[77] June 17,[78] October 4,[79] December 19,[80] 2017; January 19,[81] February 15,[82] March 25,[83] April 9,[84] May 7,[85] August 11,[86] November 2,[87] and December 22,[88] 2019.  Of these, several imposed sentences of "isolation,"[89] "quarters change,"[90] and sentences to different levels of segregation.[91]   The last sentence of a quarters change to "another" extended lockdown was imposed on May 3, 2019, due to an incident occurring the day before.[92]

Hoyt also admitted that, at least once, a Board member discussed Hoyt's complaints that the lockdown review process was essentially a sham, and assured Hoyt that the Board member would "bring it up when [he or she got] up there."[93] Thus, there is some evidence that Hoyt received a bit more substantial review than a box checked mindlessly.[94] Considering that *some* more review was conducted above and beyond the rote checking of a box, given Hoyt's many disciplinary infractions while in segregation, and considering the burden on Hoyt to overcome qualified immunity with regard to individual capacity claims for monetary damages, it was not clearly established at the time of the violation that the process afforded to Hoyt in reviewing his

---

[77] R. Doc. 26-5, p. 26.
[78] R. Doc. 26-5, p. 25.
[79] R. Doc. 26-5, p. 22.
[80] R. Doc. 26-5, p. 21.
[81] R. Doc. 26-5, pp. 18-19.
[82] R. Doc. 26-5, pp. 15-16.
[83] R. Doc. 26-5, p. 14.
[84] R. Doc. 26-5, p. 12.
[85] R. Doc. 26-5, p. 4.  It appears Hoyt refused to appear before the disciplinary board for this infraction.  R. Doc. 26-5, p. 11.
[86] R. Doc. 26-5, p. 3.
[87] R. Doc. 26-5, p. 2.
[88] R. Doc. 26-5, p. 1.
[89] R. Doc. 26-5, pp. 74 & 77.
[90] R. Doc. 26-5, p. 76.
[91] R. Doc. 26-5, p. 71.
[92] R. Doc. 26-5, p. 8.
[93] R. Doc. 26-6, p. 37.
[94] *Compare Wilkerson*, 2013 WL 6665452, at *11 (noting that release was denied by only the checking of a box with no comments or annotations provided).

continuing segregation was insufficient to satisfy the requirements of due process.[95]  Therefore, the Defendants are entitled to qualified immunity on Hoyt's claims for monetary damages in their individual capacities.

###    D.  Hoyt's State Law Claims Remain

In addition to his federal claims, Hoyt also asserts state law claims under the Louisiana Constitution. As noted previously in this case, Article I, Section 2 of the Louisiana Constitution, "provides the same due process protections as…the United States Constitution."[96] Federal courts must apply the state's substantive law of qualified immunity when evaluating a state law claim.[97] Defendants do not request dismissal of Hoyt's state law claims based on qualified immunity or otherwise point to any state law supporting dismissal of the state law claims.  Accordingly, Hoyt's state law claims remain, except for Hoyt's claims for injunctive relief against Vannoy for the same reasons as stated above.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Motion for Summary Judgment, filed by Defendants Darryl Vannoy, Tammy Hendrickson, and Michael Jack, be **GRANTED IN PART AND DENIED IN PART**, that all Plaintiff Johnny Hoyt's claims against Darryl Vannoy, as well as his claims for monetary relief against Jack and Hendrickson in their individual capacities be **DISMISSED WITH PREJUDICE**, and that this action be referred to the undersigned for further

---

[95] *Compare Wilkerson*, 2013 WL 6665452 (M.D. La. Dec. 17, 2013) (it was clearly established that the rote checking of a box is fatal to the contention that the inmates received due process).  In *Wilkerson*, "[n]ot a single review form … ha[d] any annotations or written reasons assigned in the comments section."  *Id.* at 11. Here, there is, at least, some commentary on some of the lockdown review summaries, albeit minimal.  Also distinguishing is the fact that in *Wilkerson*, the plaintiffs had relatively "clean" disciplinary records while in segregated confinement while Hoyt has a lengthy record of disciplinary infractions while in CCR.

[96] R. Doc. 4, p. 11, n. 60, citing *Cripps v. Louisiana Dept. of Agriculture and Forestry*, 819 F.3d 221, 232 (5th Cir. 2016).

[97] *See Brown v. Miller*, 519 F.3d 231, 239 (5th Cir. 2008).

14

proceedings on Hoyt's remaining federal and state claims for injunctive relief, and his state law claims for monetary relief, against Hendrickson and Jack arising out of Hoyt's continued confinement in Closed Cell Restriction since 2008.

Signed in Baton Rouge, Louisiana, August 28, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**